Gary D. AGEE, Plaintiff,

v.

NORTHWEST AIRLINES,
INC., Defendant.

No. 00–40276.

United States District Court,
E.D. Michigan,
Southern Division.

July 19, 2001.

Gary D. Agee, Hurst, TX, pro se.

Elaine R. Carlis, Troy, MI, pro se.

Rachelle G. Silberberg, Clark Hill, Detroit, MI, for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Before the Court is Defendant Northwest Airlines, Inc.'s Motion for Summary Judgment filed on May 16, 2001. For reasons set forth below, this Court grants Defendant's motion.

### Factual and Procedural Background

Plaintiff Gary D. Agee is a former flight attendant with Defendant Northwest Airlines, Inc. On February 9, 1999, Defendant discharged Plaintiff and Robert Curle—Plaintiff's co-worker and roommate—for allegedly falsifying sick leave and thereafter lying and failing to cooperate in Defendant's investigation of their use of sick leave. Almost once a month for more than a year and a half, Plaintiff and Curle had taken sick leave within hours of each other for simultaneous migraine headaches on weekends they were both scheduled to work. Furthermore, when Defendant investigated this coincidence, Plaintiff stated, under oath, that the migraines left him incapable of working and capable only of staying at home to rest. (See Def.Ex. 13 at 8–9, 28.)

In 1996, Plaintiff became a patient of Dr. James M. Otto, M.D. Plaintiff told Dr. Otto that he had taken some of his roommate's prescription medication, Midrin, for his migraines and that it helped. (Def.Ex.6.) Dr. Otto prescribed Midrin, but Plaintiff later told Dr. Otto that airline regulations prevented him from taking it when he was flying. (See Def.Ex. 15 at NWA 001289.) Plaintiff later admitted that it was simply his own conclusion that he could not fly when taking Midrin and that no doctor had ever advised him of such a conclusion. (See Def.Ex. 13 at 7.)

Plaintiff submitted notes from Dr. Otto in support of sick leave in November and December 1996; February, May, August, September, and December 1997; and January, February, March, May, July, October, November, and December 1998. (See Def.Ex. 7.) According to Defendant, with the exception of one of these incidents, Plaintiff went to the doctor after his migraine was over and asked for a note excusing his sick leave.

In July, 1998, after Plaintiff reported he could not take Midrin, Dr. Otto prescribed a prophylactic medication, Depakote, and directed Plaintiff to return in one month (see Def.Ex. 8 at NWA 000313), which Plaintiff did not do. When, in December, 1998, a blood test revealed that Plaintiff had not been taking the Depakote, Dr. Otto refused to continue treating Plaintiff for migraine headaches and approving his short term disability. (See Def.Ex. 9.)

Meanwhile, Plaintiff maintained 5 to 7 horses at the K Bar B Ranch in Cress, Texas, about a 45–minute drive from his

home. According to Plaintiff, each and every day he did not fly for Northwest—including every day of sick leave—Plaintiff spent the entire day at the ranch taking care of his own horses and more than 50 horses owned by the ranch owners. (*See* Def.Ex. 1 (Agee Dep.) at 55–56, 58–59.)

In a Complaint filed on July 24, 2000, Plaintiff plead three claims for relief: Defendant discriminated against him based on race and color under Title VII, 42 U.S.C. § 2000e (Count I); Defendant refused to make "reasonable accommodations for his disability" an discharged him unlawfully under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* (Count II); and Defendant retaliated against him for exercising his rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* (Count III).

Pursuant to this Court's April 16, 2001 order, discovery closed on April 30, 2001. On May 16, 2001, Defendant filed the motion for summary judgment now before the Court.

**Discussion**

**1. Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Turnpike Commission,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, where a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated, "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving

party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transportation Service, Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *see Cox v. Kentucky Department of Transportation,* 53 F.3d 146, 150 (6th Cir.1995).

### 2. Analysis

Before analyzing Defendant's motion as to each of Plaintiff's claims for relief, the Court notes that on the day before the July 11, 2001 hearing on Defendant's motion, Plaintiff filed three "affidavits" of Plaintiff, Robert Curle, and Barbi Brandenberg. These were not notarized and were submitted long after the close of discovery. Therefore, the Court strikes them from the record and will not consider them in response to Defendant's motion.

### a. Count I

In a Title VII case, in the absence of direct evidence, the Court must apply the burden-shifting approach for inferential proof of discrimination set forth in *Texas Department of Community Affairs v. Bur-*

*dine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See e.g., Burns v. City of Columbus Department of Public Safety,* 91 F.3d 836, 843 (6th Cir. 1996). The Sixth Circuit has described the familiar *McDonnell Douglas* analysis as follows: (1) the plaintiff must establish a prima facie case of racial discrimination; (2) the employer must articulate some legitimate, nondiscriminatory reason for its actions; and (3) the plaintiff must prove that the stated reason was in fact pretextual. *See, e.g., Harrison v. Metropolitan Government of Nashville and Davidson County,* 80 F.3d 1107, 1115 (6th Cir.1996).

In order to establish a prima facie case of racial discrimination, Plaintiff must show that he: (1) was a member of the protected class; (2) suffered an adverse employment action; (3) was qualified for the position in question; and (4) was treated differently from similarly situated individuals outside the protected class. *See, e.g., Alexander v. Local 496, Laborers' International Union of North America,* 177 F.3d 394, 402–03 (6th Cir.1999); *Scales v. J.C. Bradford and Co.,* 925 F.2d 901, 906–07 (6th Cir.1991).

### i. Plaintiff's termination

First, Plaintiff conceded at his deposition that he and his white co-worker were "fired on the same day ... for the same thing." (Def.Ex. 1 (Agee Dep.) at 84; *see* Pl.Ex. 20, 21.) As Judge Avern Cohn of this judicial district recently concluded, where an employer discharges individuals, both black and white, for the same conduct, however, a plaintiff cannot establish a prima facie case of discrimination. *See Gant v. University of Main Hospital Environmental Services,* No. 00–72595, 2000 WL 33244273, at *4, 2001 U.S.Dist. LEXIS 3059, at *10–*11

(E.D.Mich. Jan.30, 2001). Therefore, because Plaintiff was treated the same as a similarly situated individual outside the protected class, he cannot make out a prima facie case as to his termination.

■ Second, even if the Court assumes that Plaintiff can make out a prima facie case, Defendant certainly has articulated legitimate, nondiscriminatory reasons for discharging Plaintiff. Defendant stated that it discharged Plaintiff for violating the Rules of Conduct for Employees of Northwest Airlines. Rule 9 of those Rules of Conduct requires that an employee be "honest and truthful in all aspects of your employee-employer relationship with the Company. Dishonesty of any kind in relations with the Company will not be tolerated." (Def.Ex. 4 at 3.) Rule 10 requires an employee "cooperate fully with the Company in any investigation concerning your conduct" and "[f]ailure or refusal fully cooperate ... is grounds for immediate discharge." (*Id.* at 3–4.) Rule 22 requires that if an employee is found to have "misrepresented or falsified a claim of illness or injury, your absence will not be approved and you will be subject to discharge." (*Id.* at 8.) There is evidence that Plaintiff was not honest when he told Defendant, under oath, that his "serious medical condition" rendered him incapable of working (*see* Def.Ex. 13 at 8–9), and admitting later in his deposition that he spent sick days laboring at the ranch (*see* Def. Ex. 1 at 55–56, 58–59).

Third, the burden shifts to Plaintiff to show that Defendant's stated reasons are a pretext for discrimination. According to the Sixth Circuit, "establishing that the employer's reason was a pretext requires that a plaintiff do more than simply impugn the legitimacy of the asserted justification; in addition, the plaintiff must also adduce evidence of the employer's discriminatory animus." *Pierce v. Common-wealth Life Insurance Co.,* 40 F.3d 796, 804 (6th Cir.1994); *see also Mitchell v. Toledo Hospital,* 964 F.2d 577, 585 (6th Cir.1992) ("Courts have repeatedly held that the plaintiff's denial of the defendant's articulated legitimate reason without producing substantiation for the denial is insufficient for a race discrimination claim to withstand a motion for summary judgment.").

In response, Plaintiff simply engaged in a lengthy denial of Defendant's articulated legitimate reason without adducing any evidence of Defendant's discriminatory animus. According to Rule 56 of the Federal Rules of Civil Procedure, if the nonmoving party does not respond with specific facts, by affidavit or otherwise, showing that there is a genuine issue for trial, then "summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e). Plaintiff submitted nothing that would create a genuine issue as to a material fact in response Defendant's legitimate, nondiscriminatory reason.

### ii. Defendant's failure to reinstate Plaintiff

First, as to Plaintiff's claim that Defendant failed to reinstate him, this Court assumes that Plaintiff can make out a prima facie case for reasons stated on the record.

■ Second, Defendant certainly has articulated legitimate, nondiscriminatory reasons for not reinstating Plaintiff when Robert Curle was reinstated. The International Brotherhood of Teamsters (the "Union"), which represents Defendant's flight attendants, grieved both Plaintiff's and Curle's terminations, and both were denied. The Union scheduled only Curle's grievance for arbitration and withdrew the grievance it filed on behalf of Plaintiff. As a result of settlement preceding arbitra-

tion, Curle was reinstated and given a "last chance" after he acknowledged that Defendant had just cause for terminating him for violations of Rules 9, 10, and 22 of the Rules of Conduct for Employees of Northwest Airlines. (*See* Pl.Ex. 23; Def. Ex. 20, ¶ 12.) Unlike Curle's case, the Union never sought to arbitrate Plaintiff's case, and Plaintiff has never acknowledged that Defendant had just cause for terminating him for violations of the Rules of Conduct.

In response, Plaintiff does not dispute that the Union pursued arbitration of Curle's case and did not pursue arbitration of Plaintiff's case. Plaintiff argues that Defendant had decided to settle with Curle before Plaintiff's grievance was withdrawn, but this timing does not negate Defendant's legitimate, non-discriminatory reason for treating the cases differently. Beyond this, Plaintiff merely states that Defendant's proffered reasons are pretexual without giving any evidentiary support for that claim. Again, the nonmoving party must respond with specific facts, by affidavit or otherwise, showing that there is a genuine issue for trial, otherwise "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R.Civ.P. 56(e). Plaintiff submitted nothing that would create a genuine issue as to a material fact in response Defendant's legitimate, nondiscriminatory reason.

Therefore, this Court grants Defendant's motion for summary judgment as to Plaintiff's discrimination claim under Title VII.

### b. Count II

At the hearing on Defendant's motion, the parties agreed not to argue Count II after Plaintiff's counsel admitted that Plaintiff had a "very weak claim" as to Count II. Therefore, the Court will exam-ine the issue based on the briefs submitted by the parties.

In *Cehrs v. Northeast Ohio Alzheimer's Research Center,* 155 F.3d 775, 779 (6th Cir.1998), the Sixth Circuit set out the elements of a prima facie discrimination claim under the ADA:

> To defeat an employer's motion for summary judgment in response to an ADA claim, an employee must first make out a prima facie case of discrimination by establishing the following elements: "(1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1186 (6th Cir.1996). The burden then shifts to the employer to provide a non-discriminatory explanation for the employment decision. *Id.* If the employer offers what appears to be a legitimate explanation, the employee then has the burden of "showing that the proffered explanation is pretextual." *Id.*

*Cehrs,* 155 F.3d at 779.

Defendant asserts that Plaintiff is unable to demonstrate the first element of his ADA claim, namely that he is disabled. The ADA defines the term "disability" with respect to an individual as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). At his deposition Plaintiff testified that his migraines do not substantially limit his ability to perform everyday functions, such as driving substantial distances, cooking meals, and caring for himself. (*See* Def.Ex. 1 (Agee Dep.) at 91–92.) Plaintiff could not identify a single incident

where a migraine prevented him from performing his duties as a flight attendant. (*See id.* at 168–69.) Migraines ·did not prevent Plaintiff from undertaking physical labor such as the daily feeding, grooming, and exercising horses and cleaning their stalls. (*See id.* at 55–56, 58–59.) Apparently the old saying (attributed to Sir Winston Churchill) that "the outside of a horse is good for the inside of a man" holds true, because Plaintiff has produced no evidence of an impairment that substantially limited any of his major life activities.

Even if Plaintiff's migraines could be considered a disability under the ADA, Defendant has provided a legitimate non-discriminatory explanation for its employment decision, as discussed above. Thus, the burden shifts to Plaintiff to show that the proffered explanation is pretextual. In response, however, Plaintiff merely states that "Plaintiff submits that his evidentiary support in opposition to defendant's motion for summary disposition will defeat the defendant's claim of entitlement for summary judgment. All of the evidence presented by the Plaintiff demonstrates that there are genuine issues of material fact yet to be determined." (Pl.Resp. at 18.) Plaintiff submitted nothing in response that would create a genuine issue as to a material fact regarding his alleged disability. *See* Fed.R.Civ.P. 56(e). Therefore, this Court grants Defendant's motion for ·summary judgment as to Plaintiff's discrimination claim under the ADA.

Finally, Plaintiff did not explicitly state in his charge of discrimination that Defendant failed to accommodate his disability. For that claim to be before this Court, it must grow out of the EEOC investigation or the facts alleged in the charge must be sufficiently related to the claim such that those facts would prompt an investigation of the claim. *See Jones v. Sumser Retire-*

*ment Village,* 209 F.3d 851, 853 (6th Cir. 2000) Plaintiff's claim of failure to accommodate does not meet this test because Plaintiff admits that he never sought an accommodation for his alleged disability. (*See* Def.Ex. 1 (Agee Dep.) at 85–86.)

### c. Count III

■ In order to establish a prima facie claim of retaliation under the FMLA, a plaintiff must show: "(1) ʹhe engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity." *Strickland v. Water Works And Sewer Board of The City of Birmingham,* 239 F.3d 1199, 1207 (11th Cir.2001); *see Soletro v. National Federation of Independent Business,* 130 F.Supp.2d 906, 913 (N.D.Ohio 2001); *Jeremy v. Northwest Development Center,* 33 F.Supp.2d 635, 639 (N.D.Ohio 1999). The plaintiff bears the burden of proving each of these elements by a preponderance of the evidence. *See Routes v. Henderson,* 58 F.Supp.2d 959, 979 (S.D.Ind.1999) (citing *Diaz v. Fort Wayne Foundry,* 131 F.3d 711, 713 (7th Cir.1997)).

■ Assuming that Plaintiff can show the first two elements of his FMLA claim, Plaintiff has not adduced evidence of the third element in response to Defendant's motion. "The 'causal link' between the protected activity and adverse employment action is demonstrated by showing that the employer would not have taken the adverse action 'but for' the employee's protected activity." *Routes,* 58 F.Supp.2d at 979 (citing *King v. Preferred Technical Group,* 166 F.3d 887, 892 (7th Cir.1999)). Defendant did not terminate Plaintiff for protected activity; rather Defendant terminated Plaintiff for lying about that activity and for not fully complying with Defendant's investigation into that activity. Plaintiff has not come forward with specif-

ic facts to show that Defendant would not have discharged Plaintiff but for his protected activity. Therefore, this Court grants Defendant's motion for summary judgment as to Plaintiff's discrimination claim under the FMLA. *See* Fed.R.Civ.P. 56(e).

**Conclusion**

Accordingly, this Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that the "affidavits" filed on July 10, 2001 [Docket Entries 24, 25, 26] are **STRICKEN** from the record.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Response [Docket Entry 23] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [Docket Entry 15] is **GRANTED**.

**IT IS FURTHER ORDERED** that this civil action is dismissed.

**SO ORDERED.**