**David HENEGAR, Plaintiff,**

v.

**DAIMLER–CHRYSLER CORPORATION, Defendant.**

**No. 02–73039.**

United States District Court, E.D. Michigan, Southern Division.

Aug. 19, 2003.

Isaiah Lipsey, Jr., Southfield, MI, for Plaintiff.

Michelle J. LeBeau, Kristin P. Allen, Bloomfield Hills, MI, for Defendant.

**OPINION AND ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND (2) DISMISSING PLAINTIFF'S COMPLAINT**

BORMAN, District Judge.

Presently before the Court is Defendant Daimler–Chrysler's Motion for Summary Judgment. (Docket Entry 10.)

## I. INTRODUCTION

In this case, Plaintiff David Henegar alleges that his employer, Defendant Daimler–Chrysler Corporation, violated the Family Medical Leave Act of 1993 ("FMLA") by terminating his employment. Plaintiff's complaint alleges two counts: (1) "Violations of the Family Medical Leave Act," and (2) "Retaliation."

Defendant has filed the present motion for summary judgment, arguing that the Plaintiff did not notify the Defendant "as soon as practicable" after learning that a leave of absence was needed for a "serious health condition" pursuant to the requirements of the FMLA. 29 C.F.R. § 825.303.[1]

For the reasons more fully stated below, the Court agrees with the Defendant, and finds that the Plaintiff failed to notify the Defendant as soon as practicable that he needed a leave of absence for a serious health condition pursuant to the requirements of the FMLA. *See id.* Accordingly, the Court grants Defendant's Motion for Summary Judgment.

## II. BACKGROUND

On November 14, 1994, Defendant Daimler–Chrysler hired Plaintiff David Henegar into its Trenton Engine Plant as an hourly production employee. At the time he was hired, Plaintiff was 23 years-old.

During his employment with the Defendant, Plaintiff was disciplined numerous times. (Pl.'s dep. at 41, Def.'s Br.) Defendant disciplined Plaintiff for tardiness, absenteeism, and being away from his job. (*Id.*) In August of 2000, Plaintiff served a ten day disciplinary layoff for excessive absenteeism. Defendant even terminated Plaintiff's employment on three occasions, although the Defendant conditionally reinstated the Plaintiff after the first two terminations. (*Id.* at 41–42.) The third termination is the subject of this lawsuit.

Defendant terminated Plaintiff's employment for the first time in 1996 or 1997 because Plaintiff wrote down more hours on his time card than he actually worked. (*Id.*) Plaintiff was subsequently reinstated. Defendant terminated Plaintiff's employment for the second time because he did not have evidence that he called into the company's automated phone system to request a personal day. (*See id.*) Plaintiff was again subsequently reinstated. Defendant terminated Plaintiff's employment for the third time on April 26, 2001, although the termination was retroactive to April 7, 2001. The circumstances surrounding this third termination give rise to this lawsuit.

Plaintiff suffers from what has been diagnosed as irritable bowel syndrome, ulcers, and stress. The symptoms of these conditions include severe diarrhea, vomiting, burning of the stomach, and sharp, burning chest pains. Plaintiff began suffering from irritable bowel syndrome, ulcers, and stress in approximately 1999. (*Id.* at 49, 51.) Although the severity of Plaintiff's symptoms vary, Plaintiff experi-

---

1. In its motion for summary judgment, Defendant made two additional arguments: (1) that the Plaintiff's leave of absence was foreseeable pursuant to 29 C.F.R. § 825.302, and (2) that Plaintiff's FMLA claims are barred because the application for employment that the Plaintiff signed stated that any claims related to his employment must be filed within six months. The Court has considered both arguments, but the Court finds that they lack merit. As to (1), the Court concludes that the history of Plaintiff's medical condition did not establish grounds for concluding that the instant situation was foreseeable. As to (2), the Court concludes that U.S. District Judge Patrick Duggan's opinion in *Lewis v. Harper Hospital*, 241 F.Supp.2d 769 (E.D.Mich.2002) correctly held that there is no six month period of limitations with regard to Plaintiff's filing the instant claim. *See* 29 C.F.R. § 825.220(d).

ences the symptoms daily. (*Id.* at 51.) During his employment, Plaintiff never informed the Defendant of his health condition.

On Saturday, April 7, 2001, Plaintiff's irritable bowel syndrome and ulcers flared up, and he began suffering from burning of the stomach, severe diarrhea, vomiting, and chest pains. (*Id.* at 48.) Because his doctor does not have office hours on Saturday or Sunday, Plaintiff waited until Monday, April 9, 2001 to seek medical attention.

On Monday, April 9, 2001, Plaintiff was still feeling ill. He telephoned the Defendant's automated computer system to inform the Defendant that he would not be attending work that day. The computer messaging system asked him his Chrysler employee identification number and the reason why he would not be attending work that day. The computer system gave the Plaintiff a number of choices to explain why he would not be at work. Plaintiff selected the "ill" option. (*Id.* at 54–55.) Even though Plaintiff had already used all his "sick" days, he did not call his supervisor or human representative to explain the nature of his illness. (*Id.* at 53, 76.) Because he was suffering from severe symptoms of diarrhea and chest pains, Plaintiff went to see his doctor, Dr. Vilma Garg. Dr. Garg prescribed Plaintiff some medicine, and told him not to work and to return in a week for another checkup. (*Id.* at 57.)

On April 12, 2001, while supposedly still suffering from severe symptoms, Plaintiff drove himself to the Trenton Engine Plant to pick up his paycheck. (*Id.* at 165.) While he was at the plant, Plaintiff did not inform his supervisor or human resources representative of the nature or severity of his illnesses, nor did the Plaintiff inform his supervisor or human resources representative that he would be out of work for

any length of time. (*Id.* at 88–89.) After picking up his paycheck, Plaintiff then drove to the bank to deposit his paycheck in his bank account.

On or about April 16, 2001, Plaintiff went back to Dr. Garg's office. (*Id.* at 58.) He told Dr. Garg that he was still experiencing severe diarrhea, intermittent chest pains, and burning in the stomach. (*Id.* at 95.) At this appointment, Dr. Garg advised the Plaintiff that he should remain off of work for another week. Dr. Garg informed the Plaintiff that he needed to exercise, lose some weight, and to find a way to relieve stress. (*Id.*) After receiving Dr. Garg's advise, Plaintiff again called into the Chrysler automated telephone system to inform the Defendant that he would not be to work for another week. He again selected the "ill" option. (Call-in log, Def.'s Br. Exh. F.) He did not call his supervisor or human representative to explain the nature of his illness. (Pl.'s dep. at 57, Def.'s Br.)

On April 17, 2001, even though Plaintiff was supposedly too sick to work, Plaintiff played golf with the company golf league. In his deposition, Plaintiff was asked how he could golf, but could not work:

Q. How is it, so that I understood you, that you can go golfing for the afternoon but you're incapable of going to work?

A. Work was more of a stressful area. Golfing was supposed to relieve my stress and physically help me deal with and release stress.

(*Id.* at 142.)

Jeffrey Jan, a Chrysler supervisor, spotted the Plaintiff golfing on April 17, 2001. On April 19, 2001, Jan notified human resources employee Matthew Cady that he had seen the Plaintiff golfing in the company golf league on April 17, 2001, even though the Plaintiff was supposed to be too sick to work. (April 19, 2001 Jan

email, Pl.'s Resp.) Jan had no knowledge that Plaintiff had asserted any rights under the FMLA, nor did Jan have any knowledge of the nature or severity of the Plaintiff's illness. The fact that Plaintiff was golfing led Jan to believe that Plaintiff was not seriously ill. (Jan's Aff., Def.'s Br.)

Bradley S. Pulter, another Chrysler supervisor, emailed Matthew Cady on April 18, 2001. He informed Cady that a subordinate employee told him that the Plaintiff called into work on Friday, April 6, 2001, stating that he was suffering from an upper respiratory infection, and would be back to work on Monday. Pulter's email informed Cady that even though Plaintiff was supposedly too sick to work, Plaintiff came into the Trenton Engine Plant on Monday, April 16, 2001 to pick up his paycheck, and that Plaintiff was spotted playing golf in the company golf league. (April 18, 2001 email from Pulter, Exh. to Pl.'s Br.)

On April, 21, 2001, Plaintiff again called into the Defendant's automated telephone system. He again selected the "ill" option.

On April 23, 2001, Plaintiff returned to Dr. Garg. He told Dr. Garg that although he was still suffering from diarrhea, he felt as if he could return to work. Dr. Garg cleared Plaintiff to return to work.

On April 24, 2001, Plaintiff went to the Trenton Engine Plant to get permission from the company nurse to return to work. Upon arriving at the plant, the nurse informed the Plaintiff that the company labor representative wanted to speak to him. Greg Sharp, the labor representative, informed the Plaintiff that his time off of work was being investigated. (*Id.* at 117.) Plaintiff presented Sharp with a note from Dr. Garg, which stated in very messy handwriting: "David is sick and under my care and was totally incapacitated to work from 4–7–01 to 4–23–01. He returns to

work from 4–24–01 on reg. duty." (Def.'s Br. Exh. C.)

On April 26, 2001, Defendant terminated Plaintiff's employment. Before terminating Plaintiff's employment, Matthew Cady contacted Dr. Garg's office in order to verify that the Plaintiff had actually been treated by Dr. Garg. Cady "was advised by Dr. Garg's office staff that Mr. Henegar did not treat with Dr. Garg between April 4, 2001 and April 23, 2001." (Cady Aff. at ¶ 8, Def.'s Br.) After verifying that Plaintiff did not seek medical treatment from Dr. Garg, Cady wrote a letter to the Plaintiff, informing him that his employment was terminated effective April 7, 2001. The letter states that the reason for the termination was that the Plaintiff did not submit proper medical documentation, and that his absence beginning on April 7, 2001 "was not properly substantiated...." (April 26, 2001 termination letter from Cady to Henegar, Def.'s Exh. E.) In a sworn affidavit, Matthew Cady stated that he terminated the Plaintiff's employment "[b]ased upon the insufficient medical documentation presented by the Plaintiff, information received by Mr. Jan regarding his participation in a golf league during his absence, and my conversation with Dr. Garg's office...." (Cady Aff. ¶ 9, Exh. to Def.'s Br.)

On April 30, 2001, Plaintiff submitted another note from Dr. Garg. The note is dated April 9, 2001, and states: "David is sick & is suffering spastic colon & PUD with exacerbation & is totally incapacitated to work. He should be excused from work from 4–7–01 to 4–23–01. He will return to work on reg duty on 4–24–01." Even though the note from Dr. Garg is dated April 9, 2001, Plaintiff testified in his deposition that Dr. Garg actually wrote the note for him on or about April 30, 2001. (Pl.'s dep. at 148–149, Def.'s Br.) Plaintiff testified that a union representative told

him that it would be helpful if Dr. Garg would write him a note dated on April 9, 2001. (*Id.* at 152.) Thus, Plaintiff submitted a fraudulently dated note to the Defendant as an excuse for his absence.

On July 25, 2002, Plaintiff David Henegar filed the present lawsuit against Defendant Daimler–Chrysler Corporation. The complaint alleges two counts: (1) "Violations of the Family Medical Leave Act," and (2) "Retaliation." Plaintiff alleges that the Defendant violated the FMLA and retaliated against him by terminating his employment.

## III. ANALYSIS

### A. Standard for a Motion for Summary Judgment

This Court grants summary judgment when "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is proper when "a party ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, "the mere existence of a scintilla of evidence" in support of the non-moving party is not sufficient to show a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. The Family Medical Leave Act of 1993

The FMLA provides eligible employees twelve weeks of unpaid leave each year for, among other things, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). When the leave is foreseeable, the FMLA requires that the employee give 30 days notice to take a leave of absence, or if 30 days notice is not practicable, the employee must give notice of leave as soon as practicable. 29 U.S.C. § 2612(e)(2)(B); 29 C.F.R. § 825.302.

When the need for leave is unforeseeable, the Department of Labor's regulations require that the employee notify his employer of the need for FMLA leave as soon as practicable, but usually within one or two days of learning of the needed leave. The applicable regulation, 29 C.F.R. § 825.303, states in pertinent part as follows:

(a) When the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case. It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible. In the case of a medical emergency requiring leave because of an employee's own serious health condition or to care for a family member with a serious condition, written advance notice pursuant to an employee's internal rules and procedures may not be required when FMLA leave is required.

(b) The employee should provide notice to the employer either in person or by telephone, telegraph, facsimile ("fax") machine or other electronic means... The employee need not expressly assert right under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means. The employee ... will be expected to provide more information when it can readily be accomplished as a practical matter, taking into consideration the exigencies of the situation.

As the Department of Labor's regulation clearly indicates, the employee need not mention the FMLA by name when requesting leave. Although the employee need not specifically mention the FMLA by name when requesting leave, " 'the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition.' " *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 523 (6th Cir.1998).

### C. Plaintiff Failed to Provide Sufficient Notice of His Need for Unforeseeable Leave

Even if the Plaintiff's April 7, 2001 though April 23, 2001 leave of absence was unforeseeable, Plaintiff failed to give timely notice "as soon as practicable" after learning that leave was needed for a serious health condition. In determining whether an employee provided sufficient notice to his employer, the Sixth Circuit has held that the "critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 523 (6th Cir.1998). Courts have held

that an employee merely notifying his employer that he is sick, without more, is not sufficient notice to invoke the FMLA. Rather, the employee must notify the employer that he is suffering from a serious health condition that prevents him from performing his normal job. *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 451 (6th Cir.1999) (holding that "an employee gives his employer sufficient notice that he is requesting leave for an FMLA-qualifying condition when he gives the employer enough information for the employer to reasonably conclude that an event described in [29 U.S.C.] § 2612(a)(1) has occurred.") Although "[t]he employee need not assert his rights under the FMLA, or even mention the FMLA," he must inform the employer that he is seeking leave for a serious health condition. 29 C.F.R. § 825.303(b). Moreover, Plaintiff must provide the notice "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). Except in extraordinary circumstances where notice is not feasible, notice must be given within one or two days of learning of the need for a leave of absence. *Id.*

■ The Court finds that the Plaintiff failed to give proper notice as soon as practicable that he would need a leave of absence for a serious health condition. Plaintiff became "ill" on April 7, 2001. Plaintiff testified that the only way he notified his employer that he needed time off of work was through the company's automated telephone system. Plaintiff simply chose the "ill" option on automated telephone system. He never attempted to contact his supervisor or human resources representative concerning the nature or severity of his illness, even though he did not have company "sick" days remaining. In his deposition, Plaintiff testified as follows:

Q. At any time up and—from April the 6th of 2001 through April the 26th of 2001, did you at any time indicate to any member—any human being at Daimler–Chrysler any of the specifics of your condition or your situation or your situation or your sympomatology?

A. I don't believe so.

Q. Okay. At any time from April the 6th of 2001, which you indicated was the last day that you worked, through April the 26th of 2001, did you speak to any member of management relative to any of the reasons why you were absent from work?

A. No, I didn't.

(*Id.* at 76.) The Court finds that the notice given to the Defendant through the automated telephone system was simply inadequate to invoke the protection of the FMLA. Courts have consistently held that to give adequate notice to invoke the FMLA, an employee must inform his employer that he has a serious health condition. *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 451 (6th Cir.1999); *Brohm v. JH Properties, Inc.*, 149, F.3d 517, 523 (6th Cir.1998); *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir.1995); *see also Taylor v. Invacare Corp.*, 64 Fed. Appx. 516 (6th Cir.2003) (holding that "the employee must at least provide his employer with enough information for the employer to be put on notice that the FMLA is a consideration."). Simply selecting the "ill" option on an automated telephone system does not notify an employer that the employee is suffering from a serious health condition. *Satterfield v. Wal–Mart Stores, Inc.*, 135 F.3d 973, 980 (5th Cir.1998) (holding that a note delivered by an employee's mother, which stated that the employee "was having a lot of pain in her side" and would not be able to work that day, and the mother's statement that the employee was sick, were insufficient as a matter of law to inform the employer that the employee's request to take time off was for a serious health condition within the meaning of the FMLA); *see also Slaughter v. American Building Maintenance Co. of New York*, 64 F.Supp.2d 319, 327 (S.D.N.Y.1999). Therefore, the Court finds that by simply choosing the "ill" option on the Defendant's automated telephone system, the Plaintiff did not adequately notify the Defendant that he had a FMLA qualifying condition.

■ On April 24, 2001, Plaintiff returned to work with a handwritten note from his doctor which stated that the Plaintiff was "totally incapacitated" from April 7, 2001 to April 23, 2001. This notice was not adequate to invoke the protections of the FMLA because it was not given as soon as practicable as mandated by the FMLA. 29 C.F.R. § 825.303(a) provides that "an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case." The regulation states that normally as soon as practicable will be "within one or two days of learning of the need for leave." *Id.* Plaintiff began taking leave on April 7, 2001, but did not present the note to the Defendant until April 24, 2001, more than two weeks after taking leave. Under the facts of this case, the Court finds that the Plaintiff did not provide the note from his doctor as soon as practicable. On April 12, 2001, Plaintiff drove to the Trenton Engine Plant to pick up his paycheck. On April 17, 2001, even though Plaintiff was supposedly too sick to work, Plaintiff played golf with the company golf league. Obviously, it was feasible for the Plaintiff to give notice before April 24, 2001. Based on these facts, the Court finds that the note

from Dr. Garg was untimely, and therefore insufficient to invoke the FMLA.

At oral argument, Plaintiff's counsel argued that the Plaintiff telephoned the Defendant on Friday, April 6, 2001, informing the Defendant that he had an "upper respiratory infection." Plaintiff argues that this telephone call satisfies the notice requirement under the FMLA. This argument appears to be based upon the April 18, 2001 email from Bradley Pulter, in which Pulter wrote that his subordinate told him that the Plaintiff telephoned on Friday, April 6, 2001 saying that he had an upper respiratory infection and would be back to work on Monday, April 9, 2001. (April 18, 2001 email from Pulter, Exh. to Pl.'s Br.) Plaintiff's argument must be rejected for at least three reasons. First, the Pulter's email is clearly hearsay, since his email only repeats what his subordinate supposedly told him. "A party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact." *Sperle v. Michigan Dep't of Corr.*, 297 F.3d 483, 495 (6th Cir.2002). Second, Pulter's email contradicts Plaintiff's own deposition testimony, in which Plaintiff states that he never contacted a member of management to inform them of his illness or symptoms. (Pl.'s dep. at 76, Def.'s Br.) Plaintiff also testified that he was not feeling ill on April 6, 2001. (*Id.* at 47.) Third, and most importantly, Plaintiff's statement that he had an upper respiratory infection and that he would be back to work on Monday, April 9, 2001, did not inform the Defendant that he had a serious health condition. A respiratory infection can be something as minor as the normal cold or the flu. Based on the facts of this case, the Court finds that Plaintiff has not produced sufficient evidence that he properly invoked the FMLA by notifying the Defendant as soon as practicable that he had a serious health condition.

### D. Plaintiff Has Failed to Establish that the Defendant Retaliated Against Him for Invoking His Rights under the FMLA

In order to establish a prima facie case of retaliation, an employee must show: "(1) that he engaged in a statutorily protected activity; (2) the exercise of the protected activity was known by the defendant; (3) he suffered an adverse employment decision; (4) the decision was casually related to the protected activity." *Agee v. Northwest Airlines*, 151 F.Supp.2d 890, 896 (E.D.Mich.2001) (quotations omitted). For purposes of establishing a prima case of retaliation under the FMLA, the Plaintiff must show that he availed himself of a protected right under the FMLA by notifying his employer of his need to take leave for a serious health condition. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir.2001). The plaintiff has the burden of proving each of these elements by a preponderance of the evidence. *Id.*

Plaintiff argues that the Defendant retaliated against him by "**investigating and questioning** plaintiff's medical leave **prior** to plaintiff returning to work or submitting his doctor's excuse." (Pl.'s Br. at 16 (emphasis in original.)) As evidence that he was retaliated against, Plaintiff points to the fact that Jeffrey Jan informed Matthew Cady that Plaintiff was golfing when he was supposed to be on sick leave.

The Court finds that Plaintiff has not produced evidence of retaliation. An employer has every right to investigate and determine whether an employee is actually suffering from a serious health condition. Considering that the Plaintiff was able to come to work to pick up his paycheck on April 12, 2001, and go golfing on April 21,

2001, the Defendant had every right to investigate the Plaintiff's absence from work. Further, considering that the Plaintiff was previously disciplined for tardiness and absenteeism, the Defendant's investigation of the Plaintiff's leave of absence was justified. There is no evidence to support the argument that the Defendant's investigation of the Plaintiff's leave of absence was a form of retaliation. This is especially true when considering the Plaintiff's employment and disciplinary record.

Further, at the time Jeffrey Jan informed Matthew Cady that Plaintiff was golfing when he was supposed to be on medical leave, Plaintiff had not even informed the Defendant that he had a FMLA qualifying condition (i.e., a serious health condition). Because the Plaintiff did not adequately inform the Defendant of a FMLA qualifying condition, Plaintiff never "engaged in a statutorily protected activity" in order to establish a prima facie case of retaliation. *Id.*

At oral argument, Plaintiff's counsel also argued that the Defendant terminated the Plaintiff's employment as retaliation for the Plaintiff asserting his rights under the FMLA on prior occasions (i.e., prior to his leave on April 7, 2001). The Court asked Plaintiff's counsel where did the record disclose that the Plaintiff asserted rights under the FMLA prior to April 7, 2001. Plaintiff's counsel was only able to identify one prior occasion where the Plaintiff took FMLA leave for his daughter's tonsillectomy at which time Plaintiff had filed a timely request in advance. Plaintiff's counsel was unable to point to any evidence that showed that the Defendant's termination of the Plaintiff's employment was retaliation for the Plaintiff taking leave for his daughter's tonsillectomy. The Court finds that there is not sufficient evidence in the record to support this argument, even taking the record in the light most favorable to the non-moving party.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's Motion for Summary Judgment, and DISMISSES Plaintiff's complaint.

**SO ORDERED.**